THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES WATT, Appellant

We agree with the defendant's contention that the trial court erred in denying his motion to dismiss the indictments because they were lacking in specificity. The defendant was

charged under two indictments with multiple counts of rape, sodomy and endangering the welfare of children, arising out of offenses which allegedly occurred between 1980 and 1985. Each count in Indictment Number 85-00738 charged the defendant with an offense, alleged to have occurred "on or about and between August 1, 1984 and May 3, 1985". The defendant was convicted under 14 counts of this indictment. Of the three counts in Indictment Number 85-01096 of which the defendant was convicted, one charged him with sodomy in the first degree alleged to have occurred "on or about and between November 5, 1980 and December 31, 1981", and the other two counts related to conduct occurring between January 1, 1981, and December 31, 1981. In *People v Beauchamp* (74 NY2d 639, 641, *supra*), the Court of Appeals observed: "[We] agree with defendant's contention that all of the charges should have been dismissed on the further ground that the time period during which the crimes were alleged to have occurred (Oct. 31, 1983-Aug. 1, 1984, excluding weekends) was so excessive that it was unreasonable *(see, People v Keindl,* [68 NY2d 410, 419]; *People v Morris,* 61 NY2d 290, 295). Where an indictment charges a time interval which is so large that it is virtually impossible for a defendant to answer the charges and to prepare a defense, dismissal should follow even though the People have acted diligently and a shorter time period cannot be alleged *(see, People v Keindl, supra,* at 419; *People v Morris, supra,* at 295). The time period alleged here, even considering the nature of the crime and the ages of the victims, is an excessive interval" *(see also, People v Winkler,* 161 AD2d 743; *People v Corrado,* 161 AD2d 658).

The time periods alleged at bar are 9 months, 13 months, and 12 months, respectively, and are excessive. The People contend, however, that the bills of particulars narrowed the intervals with regard to some of the counts, thus immunizing those counts from attack on specificity grounds. While we agree that the bills of particulars can operate in this manner *(see, People v Morris,* 61 NY2d 290, 293-294), the shortest time period alleged in the bills was five months with regard to certain counts of Indictment Number 85-00738. In *People v Corrado* (161 AD2d 658, *supra*), this court held that a period of five months was excessive. Our reference in *People v Corrado (supra,* at 659), to "the questionable nature of the investigation" and "the circumstances" was never intended to countermand, even assuming that it could, the clear statement of the Court of Appeals in *People v Beauchamp (supra,* at 641), that, "[w]here an indictment charges a time interval which is so

large that it is virtually impossible for a defendant to answer the charges and to prepare a defense, dismissal should follow even though the People have acted diligently and a shorter time period cannot be alleged". We would also note that there are multiple counts of Indictment Number 85-00738 and of Indictment Number 85-001096, which are exact replicas of each other, as are the bills of particulars relating thereto. These do not "satisfy the notice requirements of the Federal and State Constitutions" *(People v Morris,* 61 NY2d 290, 293).

Were we not reversing on specificity grounds, we would have held that reversal on all of the counts relating to those children interviewed by Ms. Eileen Treacy is warranted, owing to the delay by the People in handing over *Rosario* material. During the course of the investigation, the People secured the services of Ms. Eileen Treacy, who testified as to the nature of child sex abuse syndrome. She had previously interviewed seven of the alleged victims and had taken statements from them. The existence of these statements was, however, only revealed to the defendant during Ms. Treacy's testimony and after the seven children had already testified. The defendant moved to strike the testimony of the children or, in the alternative, for a mistrial. The court denied the motion but granted the defendant the option of recalling the children for cross-examination. We agree that a substantial right of the defendant was prejudiced by this delay, which could not be cured by the offer made by the court, since it would have appeared that the defendant was heaping further abuse on the children who had already testified *(see, People v Martinez,* 71 NY2d 937, 940). None of this, however, applies to the children who were never interviewed by Ms. Treacy.

We have examined the defendant's remaining contentions and find them to be without merit. Thompson, J. P., Harwood and Lawrence, JJ., concur.

Miller, J., concurs in part and dissents in part and votes to modify the judgment under Indictment Number 85-00738, on the law, by reversing the defendant's convictions under counts 3, 4, 7, 9, 10, 12, 17, and 29, and dismissing those counts of Indictment Number 85-00738, without prejudice to the People, if they be so advised, to resubmit those charges to another Grand Jury, and as so modified, to affirm that judgment, and to reverse the judgment under Indictment Number 85-01096, and to dismiss Indictment Number 85-01096, without prejudice to the People, if they be so advised, to resubmit those charges to another Grand Jury, with the following memorandum, with which Kunzeman, J., concurs. I do not agree with

the majority's conclusion that the time frames alleged in Indictment Number 85-00738, as narrowed by the bill of particulars, relevant to the counts relating to the victim N.B., are so excessive as to have deprived the defendant of the notice due him to enable him to prepare a defense. I would therefore affirm so much of the judgment as convicted the defendant of rape in the first degree under counts 1, 2, 18 and 19 of Indictment Number 85-00738, and sodomy in the first degree under counts 22 and 23 of that indictment.

The defendant James Watt stands convicted of 11 counts of rape in the first degree, 5 counts of sodomy in the first degree, and 1 count of endangering the welfare of a child. The defendant perpetrated these most heinous crimes against helpless young girls under 11 years old, the youngest of whom were five years old. These victims had been entrusted, by their parents, to the care of the defendant and his codefendants who were operating an unlicensed daycare center in the basement of codefendant Jeanette Martin's Mount Vernon home. Each of these children testified in detail about the horrific sexual crimes committed upon them and their testimony was corroborated by, *inter alia,* verifiable medical evidence including that many suffered from sexually transmitted diseases. However, notwithstanding the truly overwhelming evidence of the defendant's guilt, I too am constrained to reverse the defendant's convictions on all but six counts of Indictment Number 85-00738.

Undeniably, the prosecution was faced with a Herculean task in trying to prepare for the trial of this action. The defendant was initially charged with crimes perpetrated against a total of 12 children. Obviously, this necessitated a great deal of investigation and preparation to gather all of the necessary witnesses and medical documentation available to prove the People's case. As part of that effort the People employed the services of Eileen Treacy, a "master level psychologist" who specializes in child sex abuse syndrome. During the course of her investigation, Ms. Treacy interviewed seven of the children who testified against the defendant. These children, T.W., K.J., R.W., S.W., M.B., N.L. and S.B., provided statements to Ms. Treacy which were incorporated into the expert's reports. Long after these seven children had testified, prior to the cross-examination of Ms. Treacy, the prosecution, for the first time, revealed the existence of these reports. Upon this revelation, the defense counsel moved for disclosure of these reports, arguing that they contained statements of these witnesses and hence, were *Rosario* material (CPL 240.45

[1] [a]; *see, People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866). The prosecution resisted disclosure, arguing, *inter alia,* that Ms. Treacy's reports constituted privileged work product. The court overruled the People's objections and ordered the disclosure of these reports.

While the defense thus was in possession of these reports for the purposes of cross-examining Ms. Treacy, the defense counsel argued that the defendant had been prejudiced by the prosecution's failure to disclose these reports prior to the cross-examination of the seven children whose statements were contained in the reports. The defense counsel moved, *inter alia,* to strike the testimony of these seven children. In the alternative, counsel sought a mistrial. The court attempted to ameliorate the prejudice suffered by the defendant by holding that the children could be recalled to the stand for further cross-examination. The defense counsel declined this offer, arguing persuasively that the court's offer, which would have led to a second recall of some of the children, would only cause the jury to infer that the defense was "further abusing these children". The court, however, determined that recalling the children would be the defendant's only option to overcome the prejudice flowing from the People's intentional *Rosario* violation. This was error.

It is well settled that the prosecution is obliged to disclose to the defense any statements of witnesses whom the People intend to call which are related to the subject matter of those witnesses' testimony (CPL 240.45 [1] [a]). Where the prosecution delays the disclosure of *Rosario* material and the defendant is substantially prejudiced thereby, reversal is required *(see, People v Martinez,* 71 NY2d 937, 940). In this case, we agree with the defendant's contention that he was prejudiced by the delay. The court's proposed solution to recall the seven child witnesses would not, under the circumstances herein, have ameliorated that prejudice, since a very real possibility existed that the jury would have seen the defendant as subjecting these children, who may already have been victimized, to additional abuse and trauma. The defendant's refusal of the court's proposed ineffective relief thus does not constitute a waiver of his *Rosario* claims *(see, People v Goins,* 73 NY2d 989). However, while we do agree that the defendant was prejudiced by the delayed disclosure of Ms. Treacy's reports, the prejudice sustained was not so substantial as to compel outright reversal *(see, People v Turcios-Umana,* 153 AD2d 707; *see also, People v Anderson,* 160 AD2d 806). Rather, under the circumstances of this case, the People's failure to disclose Ms.

Treacy's reports at worst tainted only the defendant's convictions on those counts concerning the children whose statements were not timely disclosed. No *Rosario* violation occurred as to the testimony of the other five child witnesses D.H., S.C., C.T., E.T., and N.B. Accordingly, I join in so much of the majority's holding that, while the defendant was prejudiced by the delayed *Rosario* disclosure, reversal of the entire judgments of conviction need not follow. The court should, however, have granted the defendant's motion to strike the testimony of those witnesses whose testimony was tainted by the *Rosario* violation. Of those seven witnesses, the defendant was convicted of committing sex crimes against only three, S.B. (counts 17 and 29 of Indictment Number 85-00738), K.J. (count 12 of Indictment Number 85-01096) and R.W. (counts 15 and 16 of Indictment Number 85-01096). Accordingly, since the defendant was only substantially prejudiced by the failure to disclose *Rosario* material as to these three children, only the convictions on the above enumerated counts must be reversed on that ground.

Even were we not reversing the above convictions on *Rosario* grounds, I would still be constrained to vacate the defendant's conviction on all counts except 1, 2, 18, 19, 22, and 23 of Indictment Number 85-00738, relating to the victim N.B.

Largely due to the difficulty of investigating the numerous allegations of sexual abuse perpetrated against many young victims who were unable to recall with specificity when they were victimized, the indictments charged the defendant with the commission of these crimes over very broad time frames. Under Indictment Number 85-00738, the defendant was charged with 29 acts of rape, sodomy and endangering the welfare of children over a period of approximately 10 months between August 1, 1984, and May 3, 1985. Under Indictment Number 85-01096 the defendant was charged with 18 counts of rape, sodomy and sexual abuse allegedly committed over time periods the longest of which exceeded 37 months (November 5, 1980, to December 31, 1983) and the shortest of which spanned 12 months (January 1, 1981, to December 31, 1981). The defendant moved to dismiss both indictments, alleging that these time periods were so excessive that the indictments failed to give him adequate notice of when the crimes were alleged to have been committed and that he was thus unable to formulate a defense. As to all but the six counts concerning crimes committed against the victim N.B., the defendant's motion should have been granted.

Pursuant to CPL 200.50, an indictment must contain a

separate accusation or count as to each crime charged (CPL 200.5 [3]) and "[a] statement in each count that the offense charged therein was committed on, or on or about, a designated date, or during a designated period of time" (CPL 200.50 [6]). It is beyond dispute that the purpose of an indictment is to provide the accused with fair notice of the nature of the charges and the time and place of the conduct so as to enable the defendant to prepare an adequate defense *(People v Keindl,* 68 NY2d 410; *People v Morris,* 61 NY2d 290; *People v Iannone,* 45 NY2d 589). The indictment need not set forth the actual date of the crime charged. Indeed, where the date on which a crime is committed is not an element of the crime charged the date may be alleged in approximate terms. The indictment must, however, set forth a time interval which is not so vast as to deny the defendant his constitutional right to be informed of the nature and cause of the accusation *(People v Keindl, supra,* at 417; *People v Morris, supra,* at 294-295).

In *People v Beauchamp* (74 NY2d 639) the Court of Appeals held an indictment which alleged numerous sex crimes against a daycare attendant similarly situated to the instant defendant over a period of approximately nine months, to be defective because it failed to provide the defendant with sufficient information to enable him to answer the charges and prepare a defense. Thus, pursuant to the rule of *People v Beauchamp (supra),* we would have no recourse but to dismiss all of the counts of the two indictments which alleged the commission of sex crimes over a period exceeding nine months.

Although the time frames in each count of the indictments span over nine months, six of the counts alleging that the defendant raped and sodomized the victim N.B. need not be dismissed. Indictment Number 85-00738 alleged that the defendant committed these crimes over a nine-month period between August 1, 1984, and May 3, 1985, but the People further served upon the defendant a bill of particulars which narrowed these time frames to a period of only five months between August 1, 1984, and December 31, 1984, thereby mitigating the prejudice encountered in formulating and presenting a defense. Where an indictment is defective because it alleges the commission of a crime over an imprecise time frame, this defect may be cured by providing the missing information in a bill of particulars *(People v Morris, supra,* at 293-294). This result is only fair since a defendant claiming that he was not provided with sufficiently specific time allegations is no longer prejudiced to the same extent in his ability

to prepare a defense once those allegations have been narrowed by a bill of particulars. Thus, the issue remaining which divides this court is whether a five-month period was reasonably precise, under the circumstances, to enable the defendant to prepare a defense. Contrary to the position taken by the majority, I find that a five-month time period was reasonable under the circumstances at bar.

Where time periods are alleged which are not so excessive on their face that they are unreasonable *(see, People v Keindl, supra,* at 419), an ad hoc analysis must be performed to determine whether the time periods alleged are sufficiently specific and hence, reasonable under the circumstances *(see, People v Morris, supra).* Under the *Morris* analysis, the first inquiry is to determine whether the People's failure to allege a more specific time frame is the result of intentional nondisclosure (in which case the indictment should be dismissed) or whether the People have exhibited good faith and diligent investigatory efforts. In the instant case there is no evidence of intentional nondisclosure of information related to the dates on which the crimes were alleged to have been committed nor is there any evidence that the People conducted their investigation in a less than diligent manner. Indeed, the People undertook a very complex and difficult task in preparing for this case. At least a dozen young children were victimized and these children were simply unable to pinpoint the times of the attacks with specificity. Significantly, because the entire staff of the daycare center allegedly participated in similar criminal acts, there was very little likelihood that these allegations of sexual abuse would ever see the light of day. Moreover, these acts took place in an unlicensed daycare center in which the notification requirements of Social Services Law § 413 would not be respected. Under these circumstances the People's inability to precisely allege the times when these crimes took place may be deemed excusable. Thus, the five-month time period alleged as to crimes perpetrated against victim N.B. may be deemed reasonable under the circumstances *(see, People v Winkler,* 161 AD2d 743 [five-month period upheld as to four counts of sexual abuse in the first degree]; *cf., People v Benjamin R.,* 103 AD2d 663 [five-month period upheld where continuing offense of endangering the welfare of a child was alleged]).

The difficulty of the instant investigation further distinguishes this case from *People v Corrado* (161 AD2d 658), upon which the majority relies, and *People v Romero* (147 AD2d 358), where the People exhibited less than due diligence.

*People v Algarin* (166 AD2d 287) is similarly distinguishable. In that case the Appellate Division, First Department, dismissed a multicount indictment alleging numerous similar sex crimes perpetrated by a daycare worker against the children entrusted to his care over a three-and-one-half-month period because the indictment therein was duplicitous, alleging multiple criminal acts in each count. As an alternate ground for dismissal the First Department held the three-and-one-half-month time frame excessive under the circumstances of that case. Central to this determination, however, was a finding that the time period coincided with the defendant's entire period of employment at the daycare center. The court found that the People had thus failed to make even a colorable effort to narrow down the time periods alleged. In stark contrast, in the instant case there was no similar bad faith exhibited by the People, as every reasonable attempt was made to narrow down the time period in which the crimes perpetrated against N.B. were committed. The five-month period ultimately alleged was significantly shorter than the defendant's entire tenure at the daycare center.

Furthermore, pursuant to the *Morris* analysis, it is critical to note that while the time periods alleged in the indictment were generally broad, the defendant was charged with 47 separate criminal acts which necessarily were perpetrated over an extended period. The defendant's arrest was effectuated as soon as the allegations came to light and he was indicted promptly thereafter. Thus, the People did not unduly delay the commencement of this prosecution, limiting the prejudice to the defendant.

The record indicates that the People conducted themselves in a competent manner as expeditiously as the circumstances of this case would allow. Indictments alleging sex crimes against children have been upheld where the indictment alleged that the acts were perpetrated over periods of three months *(see, People v Mendoza,* 166 AD2d 377; *Matter of Robert H.,* 152 AD2d 572; *People v Hunt,* 148 AD2d 836). None of these cases, however, presented investigations comparable with the one underlying the instant case. Considering the added difficulty of the prosecution's task, the additional two months over which the crimes perpetrated by the defendant were alleged to have been committed, did not render the six counts of the indictment alleging rapes and sodomy committed against N.B. unreasonable under these circumstances. Moreover, the indictment in this case alleged only one criminal act in each count. Thus, the counts were not fatally duplicitous,

as was the case in *People v Algarin (supra)*. In short, under the circumstances of this case, the five-month time period alleged in counts 1, 2, 18, 19, 22, and 23 of Indictment Number 85-00738 of which the defendant was convicted, was not unreasonable.

It is instructive to review the standards of reasonableness applied by other States when adults are charged with commission of sex crimes perpetrated against children. Expressly applying the ad hoc *Morris* test, the courts of the State of Wisconsin have held that sexual abuse charges alleged over a six-month period were reasonable where the 10-year-old victim could provide no more specific information to investigating authorities *(State v Fawcett,* 145 Wis 2d 244, 426 NW2d 91). In *Jackson v United States* (503 A2d 1225 [DC App]), sodomy charges alleged over a nine-month period were held to be reasonable, where the young victim could be no more specific. Such reasoning was recognized by the Court of Appeals in Ohio in *State v Barnecut* (44 Ohio App 3d 149, 542 NE2d 353) in which sexual misconduct charges were upheld notwithstanding that they were allegedly committed over a period of one year *(accord, State v Higdon,* 774 SW2d 498 [Mo App] [sodomy charges alleged over 6-month period]; *State v Hoban,* 738 SW2d 536 [Mo App] [sodomy charges alleged over 15-month-time period upheld where victim, a 7-year-old neighbor at the time of the crimes, could not recall with specificity when each incident occurred]; *People v Naugle,* 152 Mich App 227, 393 NW2d 592 ["criminal sexual conduct" charges involving defendant's 13-year-old stepdaughter upheld during alleged 10-month period]; *State v Madden,* 15 Ohio App 3d 130, 472 NE2d 1126 [rape and sodomy charges leveled against defendant for abuse of his 8-year-old granddaughter and 11-year-old son sustained notwithstanding time allegations spanning up to six months]; *State v Gingell,* 7 Ohio App 364, 455 NE2d 1066 [allegations that the defendant thrice raped his 8-year-old stepdaughter over periods of up to six months]). Indeed, the Supreme Court of Utah has found 32 months to constitute a reasonable period under circumstances involving sexual abuse and sodomy of a young child *(State v Wilcox,* 808 P2d 1028 [Utah]) and the Supreme Court of New Hampshire has sustained sex crime charges alleged over periods of up to 22 months *(State v Lakin,* 128 NH 639, 517 A2d 846). Clearly, we are not free to simply disregard New York precedents in favor of the rules of these other jurisdictions which have construed the reasonableness of such time-frame allegations in a manner to afford more meaningful access to justice to the

youthful victims of sex crimes, and there is no need to do so to sustain the defendant's conviction as to the crimes he committed against N.B. However, it is significant that other States, faced with the same balancing test as the one at bar, give greater weight to the rights of the victims, without running afoul of the due process rights due the defendants.

The law, as stated by our Court of Appeals, is that time allegations of nine months are too long *(People v Beauchamp, supra)* and that time allegations which are not so long as to render an indictment facially defective are subject to an ad hoc analysis to determine the reasonableness thereof *(People v Morris, supra)*. I have attempted to apply the law, as handed down by the Court of Appeals, in such a manner as will result in a just and equitable disposition of this case, one that does not ignore the reality that young victims of sex crimes deserve the protections of our penal laws just like any other victim. Any other result would only impede the pursuit of justice. As stated by the Supreme Court of Idaho in 1929, "It would be a very weak rule of law that would permit a man to ravish [numerous young children] and then say in effect: 'You cannot convict me of th[ese] crime[s] as you did not guess the right date' " *(State v Rogers,* 48 Idaho 567, 283 P 44, 45, quoted in *State v Clark,* 209 Mont 473, 483, 682 P2d 1339, 1345). Such a weak rule of law should not be countenanced in this case. As to the crimes committed against the victim N.B., the judgment of conviction under Indictment Number 85-00738 should be affirmed.